**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JUAN BARNES                              *

    Plaintiff                          *

        v                              *          Civil Action No. DKC-13-3194

MARY CHRISTINA, *et al*.                 *

    Defendants                         *
                      ***

<u>**MEMORANDUM OPINION**</u>

Defendants Mary Christina Wilson and Craig Rowe[1] filed a Motion for Summary Judgment in response to the above-entitled civil rights Complaint.  ECF No. 25.  Plaintiff opposes the motion.  ECF Nos. 27, and 33 – 36.  No hearing is deemed necessary by the court. *See* Local Rule 105.6 (D. Md. 2014).

**Background**

Plaintiff Juan Barnes ("Barnes") was at all times relevant to this Complaint, an inmate at the Washington County Detention Center ("WCDC").  He states he was assigned to C-pod, cell 18 on December 5, 2012, when three deputies who were collecting lunch trays came to his cell. Barnes identifies the deputies as Deputy Christina Mary (Deputy Wilson), Deputy Vincent, and another deputy whom he could not identify.  He states that Wilson approached his cell and Barnes passed his tray through the door and turned to get the rest of the trash (milk cartons) while holding the slot open with his right hand.  Barnes claims that Wilson became angry that he was holding the slot open and slammed the slot on his hand, crushing his hand and wrist.  Barnes screamed out in pain and he claims Deputy Vincent yelled, "what are you doing?"  Barnes

---

[1]     Craig Rowe is identified as "Chief of Security" on the docket and Mary Christina Wilson, is identified as "Christina Mary" on the docket.  *See* ECF No. 13.  The Clerk will be directed to correct the docket to reflect the accurate names of Defendants.

asserts that Wilson called him a "fucking freak" and slammed the door even harder.  Barnes claims that he was angry and in pain, but managed to build enough strength to push the door on the slot down with his left hand and pushed it off.  Barnes states that as he did so, Wilson jumped back and he admits stating he was "gonna get her skinny ass."  Barnes denies mentioning Wilson's race (Caucasian) and alleges she has a "race issue" because she included that erroneous information in her report of the incident.  ECF No. 1 at p. 2.

The two male deputies escorted Wilson off of the unit and put in a request for medical attention for Barnes's hand, which was swollen.  Barnes asserts that he was not seen for the injury until one week later and at that time "they" determined his hand did not require an x-ray. Barnes claims that he was asked to "sign off" regarding the need for an x-ray and that he was told he may have neuropathy.  ECF No. 1 at p. 2.

Barnes claims that Wilson attempted to have the other two deputies "conspire with her to make a false report."  He alleges that the two male deputies told him they were not backing up a falsified report.  He asserts that the report that was filed does not comply with the WCDC policy requiring all officers present to write reports or the complaining officer to list them as witnesses. He states that Wilson's report is false.  ECF No. 1 at pp. 2 – 3.

Barnes claims that the injury to his hand was done maliciously and in violation of his Eighth and Fourteenth Amendment rights.  He further alleges that he was denied medical care for the injury by the healthcare provider[2] at WCDC which amounted to deliberate indifference to a serious medical need in violation of his Eighth Amendment rights.  Additionally, Barnes asserts that his First Amendment rights were violated when he was denied the right of having letters mailed to him and was limited to having only postcards during his stay at WCDC.  He claims

---

[2]    Barnes refers to the healthcare provider as "Cogned."  ECF No. 1 at p. 1.  Service was never completed on the named Defendant.  For reasons stated below, the claim against this Defendant will be dismissed without requiring service.

that he lost friends and his family did not want to "put business on postcards."  ECF No. 1 at pp. 3- 4.  Barnes asserts that the named Defendants are responsible for the operation of WCDC.  *Id*. at p. 1.

Defendant Wilson summarized the incident in a report stating that "when I took the tray of inmate Juan Barnes . . . he extended his arm out of the drop box toward my person."  ECF No. 25 at Ex. A.  She further states that she "quickly tried to close the drop box door but wasn't able to" and that she "ordered him to get his arm back in the cell."  *Id*.  Wilson claims that Barnes attempted to grab her through the drop box on two additional occasions, scratching her left wrist in the process.  *Id*.  Wilson continued to try to close the door unsuccessfully and finally shut the door after Barnes removed his arm.  *Id*.

The two male deputies referenced in Barnes' complaint are identified by Defendants as Deputies Banzhoff and Vincent.  ECF Nos. 25-3 and 25-4.  Banzhoff states that he was assigned to hallway security at the time of the incident and he observed Vincent and Wilson collecting meal trays. ECF No. 25-3.  At the time of the incident involving Barnes, Banzhoff was at cell C-9 collecting a bag meal and heard a commotion coming from cell C-10.  *Id*.  He states that when he looked over "Wilson appeared to have  . . . Barnes  . . . hand stuck between the drop box."  *Id*.  He states that Wilson "continued to put pressure on the drop box but Barnes could not move his hand."  *Id*.  Banzhoff further states that when Wilson let the drop box go, Barnes "reached his arm out of the drop box twice appearing to try and grab Deputy Wilson."  *Id*.  Banzhoff claims that once Barnes' hand was back inside the cell and Wilson was able to secure the drop box, Barnes looked at Wilson and said, "Bitch I will fuck your skinny ass when I get out."  Banzhoff then exited the tier along with Vincent and Wilson.  *Id*.

Vincent reported that Wilson unlocked the box, took the tray from Barnes, and Barnes kept his hand in the drop box.  *Id*. at Ex. D.  Vincent states that Wilson began closing the box with Barnes' hand still inside it.  He states that "Wilson continued to push on the drop box door, with Inmate Barnes hand in there, ordering him to remove his hand."  *Id*.  Vincent adds that Wilson "started using both hands to push on the drop box door" and he asked Barnes what he was doing.  *Id*.  In response to Vincent's question, Barnes replied "[t]hat bitch closed my hand in the drop box!"  *Id*.  Wilson then "let go of the drop box" and Barnes "reached through the open box and swiped at Deputy Wilson."  *Id*.  Vincent then ordered Barnes to put his arm back in and Barnes complied.  *Id*.  Vincent claims that Barnes remarked to Wilson, after the door was closed, that he was "going to fuck your skinny ass up when I get out of here."  *Id*.  When Vincent asked Wilson what happened, Wilson stated, "he tried to grab me through the drop box."  *Id*.

Defendants submit a video recording of the incident taken from a surveillance camera. ECF No. 25 at Ex. F.  The video does not include audio and depicts the backs of the deputies involved as they are standing in front of Barnes' cell door.  Due to the perspective of the camera angle, it cannot be determined whether Barnes reached through the slot before his hand was shut in the door as Wilson claims.  It is clear, however, that Barnes "swiped" at Wilson twice and Barnes admits he did so after Wilson shut his hand in the door.  ECF No. 36 at p. 1.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant
> is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Excessive Force

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988); *see also Riley v. Dorton*, 115 F. 3d 1159, 1167 (4th Cir. 1997) (pre-trial detainee's Fourteenth

5

Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right, both require more than *de minimus* injury).

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 34.

In the instant case there are genuine disputes of material fact prohibiting summary judgment in favor of Defendant Wilson. Wilson's statement regarding the incident indicates that Barnes extended his arm out of the slot toward her person as an explanation as to why she closed the door on his hand. The statements provided by Banzhoff and Vincent do not support Wilson's assertion; rather, their observation was that Wilson closed Barnes' hand in the door, opened it, and then Barnes swiped at her twice. ECF Nos. 25-3 and 25-4. Additionally, the video surveillance does not depict Barnes swiping at Wilson three times as she states, but twice as stated by Banzhoff and Vincent. ECF No. 25 at Ex. F. What cannot be determined by the evidence submitted is Wilson's state of mind when the door was shut on Barnes' hand. The parties dispute whether Barnes' hand was shut in the door maliciously to cause harm or in

response to a breach of security by Barnes.  Resolution of that dispute requires a credibility determination that may not be reached on summary judgment.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge.").

Barnes states in his opposition response that Wilson's allegation that he scratched her wrist when he swiped at her through the door is belied by the evidence.  ECF No. 34 at p. 4. Specifically, Wilson is wearing rubber gloves that cover her wrists during the incident, making her claim she was assaulted less credible.  *See* ECF No. 25-5 at p. 5.  Barnes also states that WCDC regulations require photographs to be taken of injuries during an incident involving use of force, but none were taken of Wilson or Barnes.  ECF No. 34 at pp. 6 – 7.  That failure remains unexplained by Defendants.  Thus, the Motion for Summary Judgment as it pertains to Defendant Mary Christina Wilson shall be denied.

Defendant Craig Rowe was the Chief of Security at WCDC at the time of the incident involving Wilson and Barnes and is currently the Warden of WCDC.[3]  ECF No. 13 at p. 3. Barnes' allegation against the Chief of Security and the Warden is that they were "legally responsible for the operation of WCDC."  ECF No. 1 at p. 1.  Barnes does not elaborate on his claim as to how Rowe or his predecessor as Warden violated his constitutional rights; rather his claim appears to be one based on respondeat superior.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries

---

[3]       Rowe answered the Complaint "for his predecessor, Major Van Evans, who has since retired." ECF No. 13 at p. 3.

they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In the instant case there is no evidence that Wilson was engaged in conduct which her supervisor should have known about, but failed to stop. The incident at issue was instantaneous and does not appear to fall within the category of constitutionally offensive practices. Further, Barnes has failed to delineate a specific claim as to Rowe or his predecessor, entitling Rowe to summary judgment in his favor.

Medical Care

Barnes' claim regarding the failure to provide medical care for the injury to his hand does not state a claim as to the Defendants served. In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837

(1994).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *See Farmer,* 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce,* 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Virginia Beach Correctional Center,* 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *See Farmer,* 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton,* 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Assuming, without deciding, that the injury to Barnes' hand qualifies as a serious medical need, there is no evidence that Wilson or Rowe were aware of it and either prevented or interfered with the provision of needed medical care.  "Section 1983 liability on the part of the supervisory defendants requires a showing that:  (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly

authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards). The claim regarding medical care as it relates to Wilson and Rowe must be dismissed.

Barnes also named "Cogned Health" as a Defendant, but service on that Defendant was not obtained as the Washington County Attorney did not accept service on behalf of that Defendant. ECF Nos. 9 and 10. The claim stated against the health care provider is that there was a one-week delay in sending anyone to Barnes' cell to examine his hand. ECF No. 1 at p. 3. When Barnes' hand was examined, he states the unnamed medical staff "declined to take me to doctor neurologist [to] have [it] x-ray[ed]." *Id.* Barnes concludes that this "could amount to deliberate indifference." *Id.* His claim fails inasmuch as it amounts to a difference of opinion regarding appropriate treatment. There is no Eighth Amendment violation where diagnostic tests are declined based on medical assessments of the patient. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (disagreement with medical opinion is not deliberate indifference). Thus, the claim as to Defendant Cogned Health shall be dismissed without requiring service.

<u>Mail Claim</u>

Defendants Wilson and Rowe assert entitlement to summary judgment on Barnes' claim that his First Amendment rights were violated when his mail was restricted to postcards. ECF No. 25, p. 7, n. ii. Barnes does not oppose dismissal of that claim in his Opposition Response. Even if he did, however, Barnes fails to state a constitutionally valid claim. His assertion that he lost friends and that his family was reluctant to contact him because of the postcard only policy fails to implicate a constitutionally protected interest.

Prisoners have a First Amendment right to send and receive mail.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).   In considering whether policies regarding mail are constitutionally valid, a distinction is drawn between incoming and outgoing mail; a lower level of scrutiny applies to policies regarding incoming mail.  *Id.* at 413.  Prohibition of incoming materials from publishers (*see Thornburgh* at 408) requires the showing of a greater, legitimate security interest than policies concerning other types of mail.  *See Altizer v. Deeds*, 191 F. 3d 540, 548 (4th Cir. 1999) (inspection of outgoing mail serves legitimate penological purpose). Likewise, policies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim.  *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (requiring a showing of improper motive or interference with access to courts); *Buie v. Jones* 717 F. 2d 925, 926 (4th Cir. 1983) (isolated incident of mishandling does not show actionable pattern or practice).

Where, as here, the postcard only policy does not foreclose all avenues of communication available to Barnes and his family; his stay in the facility was transitional and temporary; and the challenged policy does not impact upon his ability to communicate with legal counsel regarding his criminal case, deference to the detention center's security concern is warranted.  *See Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1153 (D. Ariz. 2009) (no constitutional violation where postcard policy bears a rational connection to legitimate governmental interest to prevent or limit smuggling of contraband and alternative means of exercising right at issue were available to prisoners).  Accordingly, Defendants are entitled to dismissal of this claim.

A separate Order follows.

_____May 21, 2015_____          _____/s/_____
Date                                              DEBORAH K. CHASANOW
                                                     United States District Judge